COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Elder and Humphreys
Argued at Richmond, Virginia


CAROL ANN WRIGHT

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1314-11-4                      JUDGE ROBERT J. HUMPHREYS
                                                        APRIL 17, 2012
JAMES CURTIS WRIGHT


            FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                          Richard B. Potter, Judge

            Robert M. Worster III (David L. Ginsberg; Cooper Ginsberg Gray,
            PLLC, on brief), for appellant.

            Maryse C. Allen (Jaimy N. Lewis; Compton & Duling, L.C., on
            brief), for appellee.


        Carol Ann Wright ("wife") appeals the June 3, 2011 final order of the Circuit Court of

Prince William County ("circuit court") relating to her petition for rule to show cause.

Specifically, wife maintains that the circuit court erred when it refused to award counsel's fees

and costs to her.  Because the circuit court disregarded the clear terms of the parties' property

settlement agreement in denying wife counsel's fees and costs, we reverse and remand this

matter to the circuit court to enter an award of counsel's fees and costs consistent with this

opinion.  The appellee, James Curtis Wright ("husband"), raises an additional assignment of

cross-error on appeal, alleging that the circuit court "erred in denying [his] motion for offset for a

payment of $15,219.42 he had made to [wife] on June 15, 2009 where the only evidence before

the court on this payment was that [husband] made this payment to [wife] in error, in reliance

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

upon and at the instance[1] [sic] of [wife's] attorney." However, since the circuit court did not have jurisdiction to change its previous order awarding wife the $15,219.42 payment, we affirm its denial of husband's motion for offset.

## I. Background

Husband and wife were divorced by a final decree entered on January 28, 2009. The circuit court affirmed, ratified, and incorporated, but did not merge into the decree a property settlement agreement ("Agreement") which the parties had entered into. The Agreement stated, amongst other things, that they had "been informed that they may be entitled to received [sic] a total of $35,956 in tax refunds from their joint 2005 and 2007 tax returns, which shall become the sole and separate property of wife . . . ." The Agreement also provided that

> any reasonable expenses incurred by a party in the successful enforcement of any of the provisions of [the] Agreement, or in taking action as a result of the breach of [the] Agreement by the other party, whether through litigation or other action necessary to compel compliance herewith, or to cure such breach, shall be borne by the defaulting party.

The Agreement then defined "reasonable expenses" to "include, but not be limited to, counsel fees, court costs, and expenses of travel."

Subsequently, wife filed a petition for rule to show cause (show cause I) seeking to enforce terms of the Agreement unrelated to the tax refunds. While in the courthouse awaiting a hearing on show cause I, wife's counsel approached husband and told him that he was aware that husband had received two federal refund checks.[2] Husband agreed to turn over the checks as per the Agreement. However, husband was unaware that the two checks that he currently possessed

---

[1] Taken in context, we assume that husband intended to use "insistence" rather than "instance."

[2] Husband was representing himself *pro se* at the time.

were for the parties' 2006 and 2007 federal refunds.[3] The issue was then raised before the circuit court during the show cause I hearing, and the court issued a final order which required husband to "provide the tax refund checks to Carol Wright's attorney in a manner that will enable Carol Wright to deposit the tax refunds in her own account." Thereafter, husband made a payment to wife for the sum of the 2006 and 2007 federal refunds.

Later, there was some confusion as to who was entitled to the remaining tax refunds. Wife filed a new petition for rule to show cause (show cause II) seeking the 2005 federal refund check, the state refund checks for 2005 and 2007, and her counsel's fees and costs. Husband filed an answer to petition and motion for offset in response, seeking a $15,219.42 credit for his payment based on the 2006 federal refund. During the hearing for show cause II, husband testified that he initially believed that wife was entitled to only the 2005 and 2007 federal tax refunds. However, he conceded that he learned prior to the hearing in show cause II that the Agreement covered all of the 2005 and 2007 state and federal tax refunds.

The circuit court entered a judgment against husband in favor of wife for the sum of $33,137.68.[4] Nevertheless, it denied wife's request for attorney's fees, reasoning that it was a close issue and that both parties made a good faith effort to resolve the issue.[5] The circuit court

---

[3] The 2005 federal refund was issued after the order was entered in show cause I.

[4] This apparently represented the amount of the 2005 federal refund and the 2005 and 2007 state refunds less $100. The $100 discrepancy is due to a matter that is not before this Court.

[5] The court noted:

> I think [husband] had made an effort in good faith to settle it.
> Now, the fact that it took the parties three months, four months,
> five months to try and settle this case, I don't think either party
> should be rewarded for attempting to settle a case, nor should they
> be punished in any way.

then denied husband's motion for offset, because it no longer had jurisdiction over the final order from show cause I. Wife then noted this appeal.

## II. Wife's Request for Attorney's Fees and Costs

Wife contends that the circuit court was required to order payment of her attorney's fees and costs under Code § 20-109(C). Code § 20-109(C) requires that, "[i]n suits for divorce, . . . if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed before entry of a final decree, no decree or order directing the payment of . . . *counsel fee* . . . shall be entered except in accordance with that stipulation or contract." (Emphasis added).

We begin our analysis by noting that "'[m]arital property settlements . . . are contracts subject to the rules of construction applicable to contracts generally, including the application of the plain meaning of unambiguous contractual terms." Rutledge v. Rutledge, 45 Va. App. 56, 64, 608 S.E.2d 504, 508 (2005) (quoting Pysell v. Keck, 263 Va. 457, 460, 559 S.E.2d 677, 678 (2002)). Thus, "[w]hen a judgment is based upon the construction or interpretation of a contract, an appellate court is not bound by the trial court's construction of the contract's provisions. An appellate court is equally able to construe the meaning of the provisions of an unambiguous contract." Nicholson v. Nicholson, 21 Va. App. 231, 239, 463 S.E.2d 334, 338 (1995) (internal citations omitted).

In this case, the Agreement plainly stated that

> any reasonable expenses incurred by a party in the successful enforcement of any of the provisions of [the] Agreement, or in taking action as a result of the breach of [the] Agreement by the other party, whether through litigation or other action necessary to compel compliance herewith, or to cure such breach, shall be borne by the defaulting party.

The Agreement then explicitly defined reasonable expenses to "include, but not be limited to, counsel fees, court costs, and expenses of travel." Wife brought an action before the circuit court and successfully enforced the Agreement. Therefore, she was entitled to any reasonable

- 4 -

expenses she incurred in enforcing the Agreement, including counsel's fees and costs. See also Sanford v. Sanford, 19 Va. App. 241, 450 S.E.2d 185 (1994) (holding that the circuit court erred in awarding only half of the attorney's fees to a party who successfully enforced a default of a property settlement, and the agreement expressly provided for an award of attorney's fees to a party who incurred expenses and costs to enforce a default). Moreover, the plain language of the Agreement does not include an exception for good faith, the basis upon which the circuit court denied the request.

However, husband argues that because a judicial proceeding was required to interpret undefined terms in the contract, wife did not "enforce" the Agreement against him as was the case in Stroud v. Stroud, 54 Va. App. 231, 677 S.E.2d 629 (2009). In Stroud, we upheld a circuit court's denial of attorney's fees under a property settlement agreement that required a defaulting party to indemnify the other party. Id. at 238-39, 677 S.E.2d at 632-33. Under the unique circumstances of that case, the provision governing the termination of spousal support was not self-executing, and therefore the "enforcement of the agreement was not a default, but a proper means of seeking recourse." Id. Since there was not a default, an award of attorney's fees was not proper.

Husband's reliance upon Stroud is misplaced. The Agreement here did not include any terms subject to judicial interpretation. While husband initially contested whether the 2005 and 2007 state refunds were owed to wife under the Agreement, he conceded that he learned before the hearing in show cause II that the Agreement covered all of the 2005 and 2007 state and federal tax refunds. Furthermore, husband never contested the fact that wife was owed the 2005 federal tax refund.

Husband's argument that the circuit court found the attorney's fees unreasonable when it found that this was not "a simple issue at all" and that husband "made an effort in good faith to

settle" is also misguided. These statements do not equate to a finding that the fees were unreasonable. On the contrary, logic dictates that more difficult issues would naturally require greater attorney's fees, because they require more research, negotiation, and litigation.

### III. Husband's Motion for Offset

In his reply brief, husband contends that the circuit court erred in denying his motion for offset for a payment of $15,219.42 he had made to wife on June 15, 2009 where the only evidence before the court on this payment was that husband made this payment to wife in error, in reliance upon and at the insistence of wife's attorney.[6]

The circuit court denied husband's motion for offset because husband failed to timely correct the mistake in the May 2009 final order requiring him to provide the tax refund checks to wife. Rule 1:1 states that "[a]ll final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." In this case, husband failed to bring the mistake to the attention of the circuit court within 21 days, and, therefore the circuit court no longer had jurisdiction to modify its order. Thus, the circuit court did not err in denying husband's motion for offset.

In the alternative, husband contends that this was merely a clerical mistake that the circuit court could have corrected under Code § 8.01-428(B). Code § 8.01-428(B) states, in relevant part, that

> [c]lerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission may be corrected by the court at any time on its own

---

[6] We note that additional relief requested by an appellee may be raised in his reply brief. D'Auria v. D'Auria, 1 Va. App. 455, 340 S.E.2d 164 (1986).

initiative or upon the motion of any party and after such notice, as the court may order.

There is no such error in this case.

The Virginia Supreme Court has "consistently held that the statutory authority of [Code § 8.01-428(B)] should be narrowly construed and applied." Morgan v. Russrand Triangle Assocs., Inc., 270 Va. 21, 25, 613 S.E.2d 589, 591 (2005). Thus, "'scrivener's or similar errors in the record, which are demonstrably contradicted by all other documents, are clerical mistakes.' Clerical errors cause the court's record to fail to 'speak the truth.'" State Farm Mut. Auto. Ins. Co. v. Remley, 270 Va. 209, 221, 618 S.E.2d 316, 322 (2005) (quoting Wellmore Coal Corp. v. Harman Mining Corp., 264 Va. 279, 283, 568 S.E.2d 671, 673 (2002)). "'Examples of clerical errors include a typographical error made by a court reporter while transcribing a court proceeding, or an unintended error in the drafting of a divorce decree.'" Morgan 270 Va. at 25-26, 613 S.E.2d at 591(quoting Wellmore, 264 Va. at 283, 568 S.E.2d at 673). The error that husband is alleging in this case was a failure on his part in the presentation of evidence and is simply not "clerical" in nature as contemplated by Code § 8.01-428(B).

## IV.  Conclusion

Because the circuit court disregarded the clear terms of the parties' Agreement, we reverse the judgment of the circuit court denying wife counsel's fees and costs. We remand the matter to the circuit court to make a finding of reasonable attorney's fees and costs as required by the Agreement. However, the judgment of the circuit court with regard to husband's motion for offset is affirmed.

Affirmed in part,
reversed in part,
and remanded.