COURT OF APPEALS OF VIRGINIA

Present:  Judges Petty, Beales and Decker
Argued at Alexandria, Virginia

UNPUBLISHED

JOHN MICHAEL BOONE

v.      Record No. 0578-17-4

REBECCA ANN BOONE

MEMORANDUM OPINION[*] BY
JUDGE MARLA GRAFF DECKER
DECEMBER 19, 2017

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Douglas L. Fleming, Jr., Judge

Bart Colombo (O'Reilly & Mark, P.C., on brief), for appellant.

No brief or argument for appellee.


John Michael Boone (the husband) appeals a final order of the circuit court modifying

spousal support owed to Rebecca Ann Boone (the wife).  The husband argues that the court erred

by not making the order retroactive to the date of his involuntary retirement.  We hold that the

court correctly applied the law to the facts.  Accordingly, we affirm the circuit court order

modifying spousal support.

I.  BACKGROUND[1]

The parties entered into a property settlement agreement (PSA), in which the husband

agreed to pay $2,400 per month in spousal support to the wife, beginning June 1, 2010.  The PSA

further stated that "in the event [the husband] involuntarily retires . . . , spousal support shall be

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] On appeal, this Court views the evidence "in the light most favorable to the prevailing party below[,] and its evidence is afforded all reasonable inferences fairly deducible therefrom." Milam v. Milam, 65 Va. App. 439, 447, 778 S.E.2d 535, 539 (2015) (quoting Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 40, 764 S.E.2d 284, 287 (2014)).

recalculated based on the incomes of the parties at that time." The PSA was incorporated into the final decree of divorce on August 10, 2011.[2]

In July 2016, the wife filed a petition for a rule to show cause. She alleged that the husband failed to pay the full amount of spousal support in 2014 and did not pay any spousal support in 2015 and 2016. The circuit court entered an order requiring the husband to appear and show cause. The husband subsequently filed a motion to modify spousal support. He asserted that he lost his job in 2013 and had not been able to find alternate employment with a comparable income. He contended that in accordance with the PSA, he was entitled to a modification of the spousal support obligation.

On October 31, 2016, the parties presented evidence and argument. The circuit court found that the husband involuntarily retired in September 2013 when he lost his job. The court made certain findings regarding the parties' respective incomes over time. It noted that in 2011, the husband earned approximately $130,000, and the wife earned $28,000. In 2014, the husband earned no income, whereas the wife's salary was $45,000 per year. In 2015, the husband's wages were approximately $1,200, and the wife earned $64,280. In 2016, the husband found employment and received money from an annuity, and his income was approximately $45,200.

At the end of the October 2016 hearing, the circuit court concluded that pursuant to the terms of the PSA, it was obligated to recalculate spousal support based on the parties' incomes. The court further held that no evidence proved that the wife had a need for spousal support or that the husband had the ability to pay it. The court consequently, at that time, set the amount of spousal support at zero "to the date that Mr. Boone lost his job."

---

[2] We note that the final divorce decree and PSA are not in the record. However, the circuit court order in this case recites the pertinent parts of the decree and PSA, and the parties agreed below on the relevant contents of the documents. Consequently, we accept the circuit court's recitation. See e.g., Logan v. Commonwealth, 47 Va. App. 168, 172, 622 S.E.2d 771, 773 (2005) (en banc) (noting that a party can concede a fact).

The wife filed a motion to reconsider, arguing that the circuit court could not order the modification retroactively. On March 9, 2017, the parties again appeared before the circuit court. On the same date, the court entered a final order, which stated that the husband's "spousal support obligation from October 31, 2016 forward is modified to zero." The husband objected to the court's ruling setting the effective date of the modification of spousal support to the date of the hearing and not the date of his earlier involuntary retirement.

## II.  ANALYSIS

The husband raises a single assignment of error on appeal. He argues that in accordance with the terms of the PSA, his spousal support modification should have been effective as of the date of his involuntary retirement rather than after the court recalculated it. He contends that upon his involuntary retirement, "his spousal support obligation was independently, contractually modified" from the original monthly $2,400 "to an uncalculated amount . . . pending judicial recalculation."

On appeal of an order modifying spousal support, the circuit court's "findings of fact are accorded great deference[,] and its judgment will not be set aside unless plainly wrong or without evidence to support it." See Stroud v. Stroud, 54 Va. App. 231, 236, 677 S.E.2d 629, 631 (2009). However, a circuit court's interpretation of a provision of a "PSA is . . . a question of law which we review *de novo*." Everett v. Carome, 65 Va. App. 177, 185, 775 S.E.2d 449, 453 (2015).

Generally, following an award of spousal support, a circuit court may modify the award "that may thereafter accrue . . . as the circumstances may make proper." Code § 20-109(A). This provision does not authorize a circuit court to "modify[] an award for support previously accrued." Reid v. Reid, 245 Va. 409, 414-15, 429 S.E.2d 208, 211 (1993) (holding also that a circuit court cannot order restitution of past support).

Code § 20-109(C) provides that if parties to divorce litigation reach an agreement on spousal support before the entry of a final decree, the circuit court must honor the agreement. When a PSA between parties is affirmed, ratified, and incorporated into a final divorce decree, that decree "embodie[s] and enforce[s] . . . a negotiated agreement between the parties" and vests the parties with "contractual right[s]." Stroud, 54 Va. App. at 236-37, 677 S.E.2d at 631 (quoting Baldwin v. Baldwin, 44 Va. App. 93, 98, 603 S.E.2d 172, 174 (2004)).

"Support agreements that are voluntarily made by the parties are subject to the same rules of construction applicable to contracts generally." Id. at 237, 677 S.E.2d at 632 (quoting Goldin v. Goldin, 34 Va. App. 95, 107, 538 S.E.2d 326, 332 (2000)). If an agreement's terms are "unambiguous," a court "must 'adhere to the plain meaning of [the] stated terms.'" Id. (quoting Southerland v. Estate of Southerland, 249 Va. 584, 588, 457 S.E.2d 375, 378 (1995)). Similarly, we "may not 'read into [the agreement] language which will add to or take away from the meaning of the words already contained therein.'" Id. at 237-38, 677 S.E.2d at 632 (alteration in original) (quoting Southerland, 249 Va. at 590, 457 S.E.2d at 378).

A divorce decree that incorporates, memorializes, or merges a PSA is "contractual" in character and, therefore, is encompassed in the general rule that "vested contractual rights . . . 'cannot be judicially modified or terminated at the unilateral request of a contract party unless the agreement expressly authorizes such relief.'" Id. at 237, 677 S.E.2d at 632 (quoting Baldwin, 44 Va. App. at 99, 603 S.E.2d at 174). Additionally, "the moment each installment" of spousal support "falls due and [is] unpaid it becomes a vested property right and is immune from modification." See Bennett v. Dep't of Soc. Servs., 15 Va. App. 135, 144, 422 S.E.2d 458, 463 (1992); see also Richardson v. Moore, 217 Va. 422, 424, 229 S.E.2d 864, 866 (1976) ("[In] the absence of statute, payments exacted by the original decree of divorce become vested as they

accrue and the court is without authority to make any change as to past due installments."

(alteration in original) (quoting Cofer v. Cofer, 205 Va. 834, 838, 140 S.E.2d 663, 666 (1965))).

The husband argues that under the PSA, his involuntary retirement triggered the end of his spousal support obligation. He suggests that consequently, a ruling in his favor would not be a retroactive modification of spousal support.[3]

The PSA stated that "in the event [the husband] involuntarily retires . . . , spousal support shall be recalculated based upon the incomes of the parties at that time." We hold that the PSA's language that "in the event" of the husband's involuntary retirement, "spousal support *shall be recalculated* based upon the incomes of the parties *at that time*" indicates that the support adjustment would take effect at the time of the recalculation, not upon the contingency of the husband's retirement. (Emphasis added). This conclusion is the most reasonable interpretation of the plain language in light of accepted principles of construction. The plain reading of the PSA is consistent with the legal principle that when a payment of spousal support falls due and is unpaid "it becomes a vested property right" of the party owed the support. See Bennett, 15 Va. App. at 144, 422 S.E.2d at 563.

The husband's alternative construction of the provision, namely that the amount of support would change as of the earlier date of the retirement would be signified by other phrasing, and a court cannot read language into a contract that is not there. See Stroud, 54 Va. App. at 237-38, 677 S.E.2d at 632. Similarly, under the husband's interpretation of the PSA, (1) the amount of the spousal support obligation would change immediately upon his involuntary

---

[3] The husband relies on Weidlein v. Weidlein, 65 Va. App. 260, 266, 777 S.E.2d 222, 224-25 (2015), for this argument. That opinion was vacated. Weidlein v. Weidlein, 65 Va. App. 604, 779 S.E.2d 247 (2015) (*en banc*). The husband concedes that the provision at issue in this case was not self-executing, meaning that he could not unilaterally change the amount of support and court intervention was required to change the terms of the original decree. See Stroud, 54 Va. App. at 237, 677 S.E.2d at 632.

retirement, and (2) the new amount of the support obligation would remain undetermined until the recalculation was completed, presumably through later judicial determination. The husband's proposed interpretation is a strained construction of the PSA, not supported by its plain language, and would lead to unworkable results. This interpretation would be inconsistent with the logical reading of the relevant sentence in the PSA.

For these reasons, we hold that the circuit court correctly interpreted the terms of the PSA to require the modification of the husband's spousal support obligation to take effect upon the recalculation of the amount of that obligation.

## III. CONCLUSION

We hold that the parties' PSA did not provide for an automatic change in the amount of the husband's spousal support obligation upon his involuntary retirement; nor did it contemplate retroactive application of a recalculation by the court. The circuit court did not err by refusing to order a modification of spousal support retroactive to the date of the husband's involuntary retirement. Consequently, we affirm the order of the circuit court modifying spousal support.

<u>Affirmed.</u>